# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* DAVID GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:15-cv-00794-DCN |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED AIRLINES, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant United Airlines Inc.'s ("United") motion to dismiss, ECF No. 30. For the reasons set forth below, the court grants United's motion to dismiss without prejudice and gives plaintiff-relator David Grant ("Grant) leave to amend the complaint.

## I. BACKGROUND

Grant was an Aviation Maintenance Technician for United at the Charleston Air Force Base and was promoted to Lead Aviation Maintenance Technician in 2012. Pl.'s Resp. 6. During the course of his employment at United, Grant maintained engines on aircrafts including the Boeing C-17 Globemaster III aircraft, which is currently in the service of the United States Air Force. Am. Compl. ¶ 17–18. Grant alleges that he is "familiar with [United's] obligations under the Contract and has first-hand knowledge of [United's] failure to adhere to its contractual obligations." Id. ¶ 25. According to Grant, the contract between United and the government required United to properly maintain the C-17 engines in accordance with the specifications in the contract and maintenance manuals. Id. ¶ 20.

1

Grant's first amended complaint contains a number of factual allegations, which can be grouped into four categories: (1) failure to maintain positive tool control by failing to properly certify and calibrate tools that were used in the repair and maintenance of the C-17 engine and the PW 2000 engine, Am. Compl. ¶¶ 77-133; (2) failure to train and certify, Am. Compl. ¶¶ 135-150; (3) material part failures, including that United employees returned scrapped parts from a dumpster into the production line, Am. Compl. ¶¶ 152-165; (4) that Grant repeatedly expressed concerns to supervisors that United was not properly maintaining the C-17 engines, and that the termination of his employment on May 6, 2014 was in retaliation for expressing those concerns, Am. Compl. ¶¶ 152-165. Grant alleges that he reported United's allegedly fraudulent and improper practices to his superiors, but that they "never responded appropriately" to his concerns. Pl.'s Resp. 6. Grant includes an email to his supervisor dated October 3, 2013 as an exhibit to his first amended complaint that "there are several employees that are expired in their annual eye exam requirement" and "[t]hey cannot perform any [non-destructive testing] until they have their eye exam completed." Am. Compl., Ex. 3 at 2. Grant also includes as an exhibit to his first amended complaint an email dated March 18, 2014 that details concerns with "manpower staffing, overtime, inspection positions, technicians training and certification, tooling certifications, parts," and states that "[the supervisor] is not covering our staffing shortages, not recertifying our techs and is directing us to use unserviceable tools to save time." Am. Compl., Ex. 5 at 2. Grant ends the March 18, 2014 email by stating that "[b]reaking these rules and not following the maintenance procedures could result in catastrophic failure to an engine . . . [t]his would bring harm to the program and the contract." Id.

2

Grant's First Amended Complaint contains four counts: (1) presentment of a false claim under § 3729(a)(1)(A); (2) making or using false records or statements material for payment under § 3729(a)(1)(B); (3) common law fraud, suppression, and deceit; and (4) retaliatory discharge pursuant to § 3730(h). The instant suit was filed on February 24, 2015. ECF No. 1. On September 16, 2016, United moved to dismiss all claims. ECF No. 30. On October 3, 2016, Grant responded, ECF No. 31, and United replied on October 24, 2016, ECF No. 32. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.

Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B.     Rule 9(b)

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," when a party alleges "fraud or mistake," he or she "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity requires that the claimant state "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 at 590 (2d 1990)). A primary purpose of Rule 9(b) is to ensure "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." Harrison, 176 F.3d at 784 (internal citations omitted). Lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

### III.   DISCUSSION

#### A.     FRCP 9(b) and False Claims Act Pleading Requirements

United argues that Grant's first amended complaint fails to meet the pleading requirements of FRCP 8(a) and 9(b) because it does not "tether" broad allegations of fraudulent practices to any actual claims that United Airlines submitted to the government.  Defs.' Mot. 1.  United goes on to argue that the first amended complaint does not satisfy the "rigorous" and "demanding" standard for pleading materiality for cases involving the implied false certification theory of liability under the False Claims Act.  Id. at 2.

The False Claims Act prohibits any person from knowingly "caus[ing] to be presented" false claims for payment or approval to the government.  31 U.S.C. § 3729(a)(1)(A).  A false statement is actionable under the Act only if it constitutes a "false or fraudulent claim."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999).  A relator's complaint must allege the "presentment" of a false or fraudulent claim to the government for payment or approval under 31 U.S.C. § 3729(a)(1)(A) for the False Claims Act to be applicable.

##### 1.     FRCP 9(b) Pleading Requirement for Pleading Fraud with Particularity

United argues that the first amended complaint should be dismissed because it is "devoid of particularized facts explaining how United failed to meet contract specifications," including details about any specific representations made on claims for payment, Defs.' Mot. 9–11, and that this failure to plead fraud with particularity renders the first amended complaint lacking under Rule 9(b).  Id. at 6.

The pleading requirements for fraud-based claims brought under the False Claims Act must both meet the plausibility standard of Iqbal and be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Harrison, 176 F.3d at 783–85.[1] To satisfy Rule 9(b), a plaintiff asserting a claim under the False Claims Act "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (citation and internal quotation marks omitted); see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 509 (6th Cir. 2007) (explaining that to satisfy Rule 9(b), a False Claims Act plaintiff must allege "the time, place, and content of the alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.")(quoting Coffey v. Foamex L.P., 2 F.3d 157, 161–62 (6th Cir.1993). The Fourth Circuit has strictly applied the terms of Rule 9(b) to cases brought under the False Claims Act. See, e.g., Wilson, 525 F.3d at 379–80 (explaining the requirements of Rule 9(b) and affirming dismissal for failing to comply); Harrison, 176 F.3d at 784, 789–90 (same).

A relator's claim must have some indicia of reliability to support the allegation of an actual false claim. See, e.g., U.S. ex rel. Butler v. Magellan Health Servs., Inc., 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) (applying Rule 9(b) and dismissing amended complaint under [False Claims Act] due in part to plaintiff "plead[ing] a fraudulent

---

[1] Since failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6), see United States ex rel. Jones v. Collegiate Funding Servs., Inc., 469 F. Appx. 244, 257 (4th Cir. 2012), the court analyzes Grant's first amended complaint only through the Rule 9(b) framework.

scheme of conduct which may well be prohibited by law" but not pleading "any specific occurrences of a false claim"). Without plausible allegations of presentment, a relator not only fails to meet the particularity requirement of Rule 9(b), but also does not satisfy the general plausibility standard of Iqbal. See U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion.").

While Grant's March 18, 2014 email lists a number of "concerns" that could "bring harm to the program and the contract," FAC, Ex. 5 at 2, this is evidence of a fraudulent scheme of conduct similar to the one that the Butler court rejected. In Butler, the court held that a complaint that alleged incidents of practices which allegedly generated false claims but failed to plead facts relating to the content of any particular claims or the manner in which they were submitted failed to allege fraud with requisite particularity. Butler, 101 F. Supp. 2d at 1369. Grant must plead specific occurrences of a false claim, not just a detailed description of a fraudulent scheme employed by the defendant. See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1055 (S.D. Ga. 1990) (complaint did not satisfy Rule 9(b) because it provided a detailed description of a fraudulent scheme employed by the defendant but contained no specific allegations of facts that would support such fraud claims.). Here, Grant has not alleged particularized facts about even one claim that United submitted to the government.

Courts have permitted a "relaxed rule of pleading" under Rule 9(b) in cases where the alleged fraud is particularly complex, involves a large number of occurrences, or took

7

place over an extended period of time.  See U.S. ex rel. Smith v. Yale Univ., 415 F.Supp.2d 58, 84 (D. Conn. 2006) (citing In re Cardiac Devices Qui Tam Litig., 221 F.R.D. 318, 333 (D. Conn. 2004) (collecting cases)).  However, "a plaintiff cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted."  U.S. ex rel. Polansky v. Pfizer, Inc., No. 04-cv-0704, 2009 WL 1456582, at *5 (E.D.N.Y. May 22, 2009).  As the Second Circuit has observed, a relaxed pleading standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations . . . a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard."  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990) (finding that the district court properly dismissed a securities fraud claims alleged upon information and belief, and lacking supporting details).  Grant asks the court to exercise the "relaxed rule of pleading" outlined in Smith, Pl.'s Resp. 7, but the court declines to do so.  Instead, it follows the reasoning in Polansky to find that Grant's first amended complaint fails the Rule 9(b) pleading requirement.  The first amended complaint does exactly what the Polansky court warned against — in an extremely detailed first amended complaint, Grant outlines numerous instances of alleged fraud but pleads no facts to suggest that United actually submitted any false claims to the government.  The court finds these allegations too speculative to plead a fraudulent scheme under Rule 9(b).

### 2.     False Claims Act Pleading Requirements

United argues that the first amended complaint fails to plead the specifics of a particular false claim, and so does not meet the False Claim Act's pleading requirements.

8

Defs.' Mot. 7.  United also argues that the first amended complaint fails to tether any of United's alleged fraud to specific contractual requirements, as required to assert a False Claims Act claim under the implied certification theory.  Id. at 16.

To state a claim under the False Claims Act, a relator must allege: (1) a false statement or fraudulent course of conduct; (2) the requisite scienter on the defendant's part; (3) that the false statement was material to a false claim for payment; (4) that the false claim caused the government to pay out money or to forfeit moneys due.  Harrison, 176 F.3d at 788.  The central question under the False Claims Act is whether the defendant actually presented a "false or fraudulent claim" to the government.  See id. at 785 (quoting United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995)).  "The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"  Polansky, 2009 WL 1456582 at *5 (quoting Rivera, 55 F.3d at 709).  Thus, "[s]tanding alone, allegations of violations of federal regulations or laws are insufficient if a plaintiff cannot identify with particularity any actual false claims submitted by defendant to the government."  Smith, 415 F. Supp. 2d at 85.

When a defendant's actions could have led, but need not necessarily have led, to the submission of false claims, a relator must allege "with particularity" that specific false claims were actually presented to the government for payment.  Clausen, 290 F.3d at 1313 ("[W]e cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.").  The analysis of the sufficiency of the pleading under the False Claims Act and under Rule 9(b) dovetails somewhat at this stage.  In U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d

451, 457 (4th Cir. 2013), the Fourth Circuit held that the particularity requirement of Rule 9(b) does not permit a False Claims Act plaintiff "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  Similarly, in Clausen, the Eleventh Circuit stated that the relator's descriptions of alleged schemes "at most" raised questions about "internal testing policies" but there were no allegations stated with particularity of a false claim actually being submitted to the Government.  Clausen, 290 F.3d at 1312.  Here, Grant does not include any evidence of any claim actually being submitted to the government.  For example, although Grant asserts that "any claim made by [United] that included work requiring the use of a FPI Radiometer between December 2013 and March 2014 was a fraudulent claim for payment," Am. Compl. ¶ 48, he does not include any evidence that United submitted any claim requiring the use of a FPI Radiometer between December 2013 and March 2014.  In finding that Rule 9(b) was not satisfied, the Eleventh Circuit in Clausen found persuasive that no charges, actual dates, policies about billing, and no copies of bills or payments were included in the relator's complaint.  Id.  Similarly, although Grant's first amended complaint is voluminous and includes a number of exhibits, it does not contain any copies of bills or payments to prove that United actually submitted any false claims.

In Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1993 (2016), the Supreme Court held that claims filed under the implied certification theory of liability, which treats a payment request as a claimant's implied certification of compliance with relevant statutes, regulations, or contract requirements that are material

conditions of payment, can be a basis for False Claims Act liability.  The court finds that Grant has not met the requirements for an implied certification theory of liability because he has offered no evidence of a claim actually being submitted to the United States — although the first amended complaint states that Grant discovered "numerous instances" of United submitting fraudulent proof of work and being paid by the government, Am. Compl. ¶ 26, it contains no specific allegations about the details of these instances.  While it is certainly possible—and quite frankly, probable—that United's alleged failure to properly certify and calibrate tools used in the repair and maintenance of the C-17 aircraft, Am. Compl. ¶ 80, was material to the government's decision to award United the contract, Grant does not connect the allegations in the first amended complaint to specific statutory, regulatory, or contractual requirements.  Without information about the requirements governing the frequency of eye exams, Am. Compl. ¶ 148, the use of scrapped parts from a dumpster in the production line for the C-17, Am. Compl. ¶¶ 152-165, or any of Grant's other allegations, the court cannot determine materiality.

  Grant does allege a number of violations of specific internal policies.  For example, Grant alleges that United employees returned scrapped parts from a dumpster into production in violation of § 07-20-60(2)(B)(1-3) of United's Administrative/Technical Manual GMM-UAL, Am. Compl. ¶ 155, and that the swager tool was "not capable of generating sufficient force to meet the requirements" of United's General Process Manual, § 3(A)(13)(h).  Am. Compl. ¶ 57.  However, violations of internal policies alone are not sufficient to violate the False Claims Act where the internal policies are not incorporated into contractual, statutory, or regulatory requirements.  See, e.g., Johnson v. Univ. of Rochester Med. Ctr., 686 F. Supp. 2d 259, 264-68 (False Claims

Act complaint dismissed despite violations of internal hospital policy). Grant also alleges that United failed to "train and certify inspectors to meet industry standard inspection criteria." Am. Compl. ¶ 28(j). He does not, however, include any allegations that the industry standard inspection criteria were incorporated into United's contract. See, e.g., U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 370 (5th Cir. 2011) (affirming lower court's holding that deviation from industry standards was irrelevant if standards were not referenced or incorporated into defendant's contract).

Therefore, the court finds that Grant's first amended complaint fails the False Claims Act's pleading standard because at no point does it tether any of the broad allegations of a fraudulent scheme to an actual claim that United submitted to the government. The lack of specifics such as payments, dates, or other reliable indicia from which the court could infer that a specific claim was submitted is persuasive. Since there is no evidence of United submitting a claim the court also finds that the first amended complaint fails to meet the requirements for the implied certification theory of liability.

### B.     State Law Causes of Action

Grant alleges a number of common law fraud, suppression, and deceit causes of action. Am. Compl. ¶¶ 166–173. The heightened pleading standard of Rule 9(b) applies to state law claims. U.S. ex rel. Palmieri v. Alpharma, Inc., 928 F. Supp. 2d 840, 853 (D. Md. 2013) (internal quotation marks and citation omitted) (holding that Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court.). As Grant's state law claims arise from the same conduct alleged for his False Claims Act claims, the court finds that the state law claims fail to meet the heightened pleading requirement of 9(b) for the same reasons articulated above.

### C. Retaliatory Discharge under False Claims Act

United argues that Grant's retaliatory discharge claim should be dismissed pursuant to Rule 8(a) because it fails to plausibly allege that the Relator engaged in protected activity, that United knew about the protected activity, and that United took adverse action against him because of the protected activity. Defs.' Mot. 17.

The False Claims Act prohibits retaliation against any relator, providing that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(l). For a prima facie case of unlawful retaliation, a whistleblower plaintiff must establish that: (1) he engaged in "protected activity"; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity. See Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013). The Fourth Circuit has made clear that a plaintiff's allegations need only meet the pleading standard set forth in Rule 8(a), not the heightened pleading standard set forth in Rule 9(b). Smith v. Clark/Smoot/Russell, 796 F.3d 424, 433 (4th Cir.2015). At the motion to dismiss stage, a reviewing court is "obligated to view only the [plaintiff's] pleadings, and to view them generously in the [plaintiff's] favor." Young v. CHS Middle E., LLC, 611 F. App'x 130, 133 (4th Cir. 2015).

First, the relator must engage in "protected activity." United argues that Grant has failed to adequately allege that he engaged in protected activity because while Grant

13

expressed "concerns to his superiors that United was not properly maintaining the C-17 aircraft engines, that he was unable to appropriately certify work had been done due to the lack of tools and/or appropriate calibration of tools, and that employees had not received proper training," Am. Compl. ¶ 206, reporting these concerns is not "protected activity" within the meaning of the False Claims Act. Defs.' Mot. 18. To determine whether a plaintiff engaged in a protected activity, the Fourth Circuit has applied the "distinct possibility" standard. Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 344 (4th Cir.2010). Under that standard, and as a result of the 2009 amendment to the False Claims Act, protected activity includes both (i) acts done "in furtherance of a [False Claims Act] claim" and (ii) "other efforts to stop one or more violations" of the False Claims Act. Young, 611 F. App'x at 132. The Fourth Circuit has recognized that the amended False Claims Act "plainly encompasses" more activities than before, and that, "even assuming . . . that [a plaintiff] provide[s] no factual basis for alleging that the defendant [ ] [was] aware that [the plaintiff] was pursuing a claim of a fraudulent false claim, . . . that would not necessarily mean that he has pled no plausible factual underpinning for a retaliation claim." Smith v, 796 F.3d at 433-34 (internal quotation marks and citation omitted). However, courts within the Fourth Circuit have been clear that "mere reporting of concerns to supervisors" does not amount to protected activity under the False Claims Act. See Glynn v. Impact Sci. & Tech., Inc., 807 F. Supp. 2d 391, 403 (D. Md. 2011), aff'd sub nom, 710 F.3d 209 (4th Cir. 2013); see also Zahodnick v. Int'l Bus. Machines Corp., 135 F.3d 911, 914 (4th Cir. 1997) ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [Relator] was acting "in furtherance of" a qui tam action.").

In Zahodnick, the Fourth Circuit found it persuasive that there was no evidence that the plaintiff-relator "initiated, testified for, or assisted in the filing of a qui tam action during his employment . . . [i]n fact, the record discloses that Zahodnick merely informed a supervisor of the problem and sought confirmation that a correction was made" in finding that there was no "protected activity" under the False Claims Act. Id. Similarly, Grant's reporting of concerns to his supervisors is not enough for this court to find that Grant engaged in protected activity under the False Claims Act. Grant fails to allege that he conducted any investigation or took any steps in furtherance of commencing a False Claims Act action before his termination. The court finds that Grant has not sufficiently pled that he engaged in "protected activity," but analyzes the remaining prongs of a retaliatory discharge claim under the False Claims Act to demonstrate that Grant has also failed to sufficiently allege the "notice" and "retaliatory action" prongs.

Second, the relator must fulfill the "notice" requirement of the retaliation claim. United argues that Grant has failed to satisfy this requirement because he has not sufficiently alleged that his expression of "concern" to his supervisors would raise the "distinct possibility" of a False Claims Act suit, and that without knowledge of the protected activity United could not have possessed the retaliatory intent necessary to establish a violation of the False Claims Act. Defs.' Mot. 20.

The notice requirement is fulfilled if the relator uses language that, under the relevant circumstances and within the specific context in which the communications were made, puts an employer on reasonable notice that the employee is bringing to its attention conduct that qualifies as "protected activity" under the False Claims Act. Eberhardt, 167 F.3d at 868. One measure to determine whether this requirement is satisfied is the

15

"distinct possibility" standard. Id.  But post–2009 amendments to the False Claims Act, the distinct possibility standard "is no longer the (only) standard for identifying protected activity under [the Act]." Carlson v. DynCorp Int'l LLC, 2016 WL 4434415, at *4 (4th Cir. Aug. 22, 2016).  The Fourth Circuit recently concluded, albeit "without deciding," that "the second prong of § 3730(h) makes 'efforts to stop 1 or more violations' protected activity where those efforts are motivated by an objectively reasonable belief that the employee's employer is violating, or will soon violate, the [False Claims Act]." Id. at 4.

In Nifong v. SOC, LLC., No. 1:16-CV-63, 2016 WL 3406415, at *5 (E.D. Va. June 6, 2016), the court found that the notice element was fulfilled where an employee made several reports to his supervisors characterizing his employer's billing practice as fraudulent and suggesting that it should be corrected.  However, here Grant's complaints to his supervisors are couched in terms of "concerns and suggestions, not threats or warnings of [False Claims Act] litigation," and are therefore insufficient to constitute notice. U.S. ex rel. Parks v. Alpharma, Inc., 493 F. App'x 380, 389 (4th Cir. 2012); see Zahodnick, 135 F.3d at 914 (affirming summary judgment for the employers where employee "merely informed a supervisor of [a] problem," "never informed anyone that he was pursuing a qui tam action," and provided "no evidence that [the employers] were aware of [employee's] alleged protected activity"); see also Luckey v. Baxter Healthcare Corp., 183 F.3d 730, 733 (7th Cir. 1999) ("An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation."); United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 743 (D.C. Cir. 1998) ("Merely grumbling to the employer about . . . regulatory violations does not satisfy the requirement—just as it does not constitute protected activity in the first place.").  Since

Grant has not sufficiently alleged that his expression of "concern" is more than a "mere grumbling" or "suggestion for improvement," the court finds that he failed to raise the distinct possibility of a False Claims Act such that United was on notice.

Finally, the relator must plead that the employer took adverse action against him because of his protected activity. Glynn, 710 F.3d at 214. In his reply, Grant includes allegations—that he failed to allege in his first amended complaint—that since he had "brought issues to his employer about work not being completed properly" in the past without retaliation, his 2014 complaint referencing non-conformance with the government contract "was the basis" for the termination. Pl.'s Resp. 18. Notwithstanding that Grant uses facts not pled in his first amended complaint in his reply, his conclusion that his 2014 complaints were the basis for his termination is rank speculation that does not satisfy the final prong of the retaliatory discharge claim. While it certainly may be true that Grant's March 18, 2014 email to his supervisor that United was not complying with the government contract, see Am. Compl., Ex. 5 at 2, led to his termination, Grant has not pled enough facts to raise a plausible inference that this is the case.

Therefore, the court finds that the first amended complaint has failed to sufficiently plead the necessary elements for a retaliatory discharge claim under the False Claims Act.

## IV. CONCLUSION

The court **GRANTS** United's motion to dismiss for failure to state a claim without prejudice and gives Grant leave to file an amended complaint within 30 days of the date of this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 18, 2016**
**Charleston, South Carolina**