**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DAVID GRANT, Plaintiff, v. UNITED AIRLINES, INC., Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil No. 2:15-cv-00794 (DCN)

**DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS RELATOR'S**
**SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

Defendant United Airlines, Inc. ("United"), by counsel, respectfully submits this Motion

to Dismiss the Second Amended Complaint (ECF No. 37) ("Second Amended Complaint" or

"SAC") of Relator David Grant ("Relator') pursuant to Federal Rules of Civil Procedure 9(b),

8(a)(2), and 12(b)(6) and Supporting Memorandum.  In support of its Motion, United states as

follows:

The Second Amended Complaint represents Relator's third attempt to allege a valid

cause of action against United under the False Claims Act ("FCA").  Despite Relator's repeated

efforts, the allegations continue to fall well short of the particularity standard of Rule 9(b), as

well as the plausibility requirements of *Iqbal* and *Twombly*.  Relator has failed to plead a single

additional fact related to the presentment of a claim.  On this basis alone, the SAC should be

dismissed.

Moreover, even if Relator could meet the pleading standard of 9(b), the SAC would still

need to be dismissed pursuant to the FCA's public disclosure bar.  The FCA precludes suit where

the allegations have previously been disclosed publicly, unless the relator qualifies as an "original source" of that information.  Here, based on the allegations in the SAC, Relator is not offering the government new information.  Rather, Relator is recycling old allegations based on prior litigation and public information.  Because these allegations have been publicly disclosed in previous litigation and Relator is not an original source, the SAC is barred as a matter of law.

Finally, Relator's § 3730(h) retaliatory discharge claim in Count III should be dismissed pursuant to Rule 8(a) because it still fails to plausibly allege that the Relator engaged in protected activity; that United knew about this protected activity; and that United took adverse action against him because of this protected activity.  Accordingly, the SAC should be dismissed in its entirety, and as a result of the futility of further amendment, dismissal should be with prejudice.

## STATEMENT OF FACTS

On February 24, 2015, Relator filed his original complaint with the United States District Court for the District of South Carolina.  Having reviewed the case while it was under seal, the United States (the real party in interest) declined to intervene to take over the prosecution of the action pursuant to 31 U.S.C. § 3730(b)(4)(B).  The case was unsealed on February 8, 2016. (ECF No. 10).  United filed a motion to dismiss on June 23, 2016.  (ECF No. 17).

In its first motion to dismiss United argued that the complaint should be dismissed, in part, because it failed to identify even a single allegedly false claim submitted to the government. On July 5, 2016, with consent from United, Relator moved to amend the complaint, and the motion was granted on July 7th.  (ECF No. 27).  On August 5, 2016, Relator filed the Amended Complaint.  (ECF No. 28).  On September 19, 2016, United filed its second motion to dismiss, and on November 18, 2016 the Court dismissed the First Amended Complaint for failure to meet the pleading requirements of 9(b) and failure to sufficiently plead the necessary elements for a

retaliatory discharge claim under the FCA.  (ECF No. 35).  On December 19, 2016, Relator filed the SAC.  (ECF No. 37).

According to the SAC, Relator served as an aviation maintenance technician ("AMT") for United at Charleston Air Force Base.  SAC ¶ 17.  Relator alleges that United provides mechanics to maintain the engines on the Boeing C-17 Globemaster III aircraft, which are currently in the service of the United States Air Force.  SAC ¶ 2.  The C-17 engine is built by Pratt & Whitney and is known as the F117.  SAC ¶ 22.  Against this backdrop, the allegations of the SAC, just like the prior complaints, can be grouped into four categories:

First, Relator alleges that United "pencil whipped" repairs.  SAC ¶¶ 86-108.  According to the SAC, "pencil whipping" is a term of art in the airline industry referring to maintenance work that has not been completed but is signed off as having been performed.  SAC ¶ 86.

Second, Relator alleges that United failed to maintain positive tool control.  SAC ¶¶ 109-170.  According to Relator, United failed to properly certify and calibrate tools that were used in the repair and maintenance of the C-17 Aircraft and the PW 2000 engine including:  FPI radiometers (SAC ¶¶ 109-135); torque wrenches (SAC ¶¶ 136-140); torque wrench calibration testers (SAC ¶¶ 141-145); swagers and permaswagers (SAC ¶¶ 146-162); air ratchets (SAC ¶¶ 163-166); and safety wire cable gun calibration tools (SAC ¶¶ 167-170).

Third, Relator alleges that United failed to provide inspectors with the recurrent training and eye examinations necessary for them to sign off on inspection work.  SAC ¶¶ 171-174.

Fourth, Relator alleges that he was discharged because he expressed concerns about United's practices.  SAC ¶¶ 175-188.

And like the prior complaints, the SAC contains three counts:  (1) presentment of a false claim under § 3729(a)(1)(A) (the "false-claim" provision); (2) making or using false records or

3

statements material for payment under § 3729(a)(1)(B); and (3) and retaliatory discharge pursuant to § 3730(h).  SAC ¶¶ 195-205.

## LEGAL STANDARDS

### A.    Rule 9(b):  Fraud Must Be Pled with Particularity.

Sections 3729(a)(1)(A) and 3729(a)(1)(B) counts of the SAC must be plead with particularity.  *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013).  The heightened pleading standard serves four purposes.  Namely, Rule 9(b): (1) ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of; (2) protects defendants from frivolous suits; (3) eliminates fraud actions in which all the facts are learned after discovery; and (4) protects defendants from harm to their goodwill and reputation.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6).  *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 257 (4th Cir. 2012).

### B.    Rule 12(b)(6):  A Viable Complaint Must Contain Factual Allegations Supporting a Claim that is Plausible on Its Face.

In addition to meeting the particularity standard of Rule 9(b), claims brought under the FCA must be pleaded with plausibility pursuant to Rule 8(a).  A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "state[s] a plausible claim for relief" under Rule 8(a).  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citations and quotations omitted).  Pleadings that are factually or legally conclusory are not entitled to a presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (The Court attaches no such assumption to those "naked assertions" and "unadorned conclusory allegations"

devoid of "factual enhancement.").  For a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013).

To state a claim under the FCA, a relator must allege:  (1) a false statement or fraudulent course of conduct; (2) the requisite scienter on the defendant's part; (3) that any false statement was material to a false claim for payment; and (4) that the false claim or statement caused the government to pay out money or to forfeit moneys due.  *Harrison*, 176 F.3d at 788.  All four elements apply to violations of §§ 3729(a)(1)(A) and 3729(a)(1)(B).  *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th Cir. 2003).

## ARGUMENT

### A.     The SAC Fails to Identify False Claims that Were Actually Submitted to the Government.

The threshold "critical question" in every FCA case "is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme."  *Nathan*, 707 F.3d at 456.  Accordingly, "when a relator fails to plead plausible allegations of presentment, the relator has not alleged all the elements of a claim under the [False Claims] Act."  *Id.* (citation omitted).  That is because the particularity requirement of Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  *Id.* at 456-57 (citation omitted).

Rule 9(b) requires that "some indicia of reliability" must be provided in the complaint to support the allegation that an actual false claim was presented to the government. Indeed, without such plausible allegations of presentment, a relator not only fails to meet the particularity requirement of Rule 9(b), but also does not satisfy the general plausibility standard of the U.S. Supreme Court in *Iqbal*, 556 U.S. at 678.

This Court dismissed Relator's First Amended Complaint ("FAC") because the Court found that "Grant has not alleged particularized facts about even one claim that United submitted to the government." Order Granting Mot. to Dismiss at 7 (Nov. 18, 2016) ("Order"), ECF No. 35. While observing that the FAC was "extremely detailed" the Court found that the complaint was "too speculative to plead a fraudulent scheme under Rule 9(b)" because the FAC failed to plead facts to suggest that United "actually submitted any false claims to the government." *Id.* at 8. As the Court observed, "although Grant's first amended complaint is voluminous and includes a number of exhibits, it does not contain any copies of bills or payments to prove that United actually submitted any false claims." *Id.* at 10.

In the SAC, Relator doubles-down on his previously unsuccessful approach. Relator has added more facts, but no new facts such as copies of bills or payments to support the allegation that claims were actually submitted to the government. In his SAC, Relator adds various details about the contractual relationships between the Air Force, Pratt & Whitney, and Boeing. SAC ¶¶ 24-44. Relator has also added detail about the recording system through which United allegedly certifies its work repairing, overhauling, and inspecting F117 engines. SAC ¶¶ 61-80.

Despite this additional information, and more detail about the alleged fraudulent scheme, Relator has still failed to plead a single additional fact related to presentment of a claim. There are still no specifics in the SAC, such as "payments, dates, or other indicia from which a specific

claim can be inferred to have been submitted." *Jones*, 469 F. App'x at 250. Instead, Relator relies on the sort of speculative inference that the Fourth Circuit has held inadequate to state a claim under the FCA—*i.e.*, that because non-conforming maintenance work was allegedly performed, there must have been a reimbursement request filed by someone at some point. *See, e.g.*, SAC ¶ 162. ("[A]ny claim made to the Air Force that included work requiring the use of a Permaswager between 2008 and March 2014 was a fraudulent claim for payment."). Those broad allegations simply do not overcome this Court's articulation of the pleading standard under Rule 9(b).

Moreover, the additional allegations of the SAC about the contractual relationships between the Air Force, Pratt & Whitney, and Boeing actually make the presentment of a false claim to the government even more speculative. The SAC devotes 23 paragraphs and over 10 pages to describing a multi-layered; "Ladder" contract structure involving Boeing, Inc. as the prime contractor, Pratt & Whitney as a subcontractor to Boeing, and United as a subcontractor to both Pratt & Whitney and Boeing. SAC at ¶ 26-28. Yet, given this multi-layered, laddered contract structure, the SAC fails to identify which of these three entities actually presents claims to the government for payment. Nor does the SAC plead facts concerning how United might submit, or cause to be submitted, any claims whatsoever to the government. Given the complete absence of facts as to which of the three companies submits claims to the government, or what information is contained within any such submission, there is no basis for the court to plausibly infer that United either submitted, or caused to be submitted, materially false claims to the government. As a result, the "who, what, when, where and how" of the submission of claims is wholly absent from the SAC. Instead, after describing a complex subcontracting structure, the SAC pleads no facts on presentment, or any "indicia from which a specific claim can be inferred

to have been submitted." *Jones*, 469 F. App'x at 250.  In short, the SAC suffers from the same infirmity as the first and second complaints—a complete failure to identify any false claim submitted to the government—and therefore it must be dismissed.

Similarly, Count II must be dismissed because the SAC does not include reliable indicia to support the allegation of an actual false claim.  In Count II, Relator alleges that United violated 31 U.S.C. § 3729(a)(1)(B) (the "false-record" provision) by knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. Relator points to a variety of records that he alleges are false including: job information cards (SAC ¶¶ 64-70); customer maintenance tags; (SAC ¶¶ 71-75) certificates of conformance (SAC ¶¶ 76-78); and field repair purchase orders (SAC ¶¶ 79-80).  But none of these documents are claims for payment, and Count II can only survive a motion to dismiss if Relator also pleads an actual false claim for payment.   Indeed, liability under § 3729(a)(1)(B)(the "false-record" provision) is dependent on a violation of § 3729(a)(1)(A) (the "false-claim" provision).  *See United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 585 (E.D. Va. 2010) (finding that a false record cause of action must allege both (1) a false record or statement <u>and</u> (2) a false claim).  As this Court noted, a "relator's claim must have some indicia of reliability to support the allegation of an actual false claim."  Order at 6 (citing *United States ex rel. Butler v. Magellan Health Servs . Inc.*, 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000)). Here, Relator has failed to make particularized allegations of an actual false claim for payment and so Count II should be dismissed.

**B.    The SAC Should Be Dismissed Pursuant to the Public Disclosure Bar.**

Even if Relator had properly alleged the presentment of a false claim—and he has not— the SAC would still need to be dismissed because it is precluded by the FCA's public disclosure bar. 31 U.S.C. § 3730(e)(4)(A).  Although designed to incentivize whistleblowers, the FCA also

seeks to prevent parasitic lawsuits based on previously disclosed fraud. *See United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 777 F.3d 691, 695 (4th Cir. 2015). To balance these conflicting goals, Congress set careful limits on *qui tam* suits. Pertinent here is the public-disclosure bar, which bars *qui tam* suits based on fraud already disclosed in particular settings—such as hearings, government reports, or news reports—unless the relator meets the definition of an "original source" under the FCA. 31 U.S.C. § 3730(e)(4). A *qui tam* action must be dismissed if the same allegations or transactions were already publicly disclosed. *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013). Indeed, as interpreted by the Supreme Court, the phrase "allegations or transactions" in § 3730(e)(4)(A) suggests a wide-reaching public disclosure bar. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011) (observing that the public disclosure bar provides a broad sweep because the phrase allegations or transactions has a broad meaning).

The FCA is designed to encourage whistleblowers with inside knowledge to report fraud, rather than to allow windfalls to relators who repeat allegations from previous litigation. Here, the central allegations of Grant's complaint are based on allegations or transactions that were already publicly disclosed in an earlier FCA case brought against United. *See United States ex rel. Niven v. United Air Lines*, No. 2:03-0386-23 (D.S.C.) (Exhibit A).[1] Indeed, some of the allegations in Grant's FAC were plucked verbatim from the *Niven* complaint.

| Second Amended Complaint in *United States ex rel. Niven v. United Air Lines* | First Amended Complaint in *United States ex rel. Grant v. United Airlines* |
|---|---|
| Niven alleged that United was "paid by the United States of America based on proof of work carried out to the required specifications." SAC ¶ | Grant alleged that United was "paid by the United States of America based on fraudulent proof of work carried out to the required |

---

[1]       A court may consider extrinsic evidence on a motion to dismiss if the extrinsic evidence was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity. *See Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir.1999).

| 14. | specifications." FAC ¶ 26. |
|---|---|
| Niven alleged that United failed to "perform or have performed required maintenance and safety checks on components, tools, and equipment essential to the proper maintenance of the C-17's engines." SAC ¶ 16(h). | Grant alleged that United failed to "perform required maintenance and safety checks on components, tools, and equipment essential to the proper maintenance of the C-17's engines." FAC ¶ 28(f). |
| Niven alleged that United refused to "purchase or provide proper equipment for the use of rivets, resulting in improper repair to cowlings, which would then sustain further damage during flight." SAC ¶ 16(d). | Grant alleged that United refused to "purchase or provide proper equipment and tools for the use of rivets, resulting in the improper repair to nose cowls, which are then more likely to sustain further damage during flight operations." FAC ¶ 28(p). |

A district court resolving a public disclosure bar challenge must, on a claim by claim basis, apply a three-prong analysis to the operative complaint to determine whether the public disclosure bar applies: (i) whether there was a public disclosure, (ii) whether the relators' allegations are substantially the same allegations or transactions, and (iii) whether the relators are entitled to original source status. *See United States ex rel. Wilson v. Graham Cnty. Soil & Water Conservation Dist.*, 528 F.3d 292, 299 (4th Cir. 2008), *rev'd on other grounds by Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280 (2010). Each of the three prongs is discussed below.

### 1. The Complaint in *United States ex rel. Niven v. United Air Lines* Is a Public Disclosure.

The *Niven* complaint is a qualifying public disclosure. The public disclosure bar identifies three sources through which a qualifying public disclosure may occur. 31 U.S.C. § 3730(e)(4). One of these sources is a federal criminal, civil, or administrative hearing in which the government or its agent is a party. Here, the *Niven* complaint qualifies as a public disclosure because the government was a party in that FCA case.

### 2. Grant's Complaint Contains Substantially the Same Allegations as the Complaint in *Niven*.

The application of § 3730(e)(4) requires a claim-by-claim analysis of the complaint as amended. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007). A side-by-side

comparison of the two operative complaints reveals that Grant's complaint contains substantially

the same allegations as the publicly-disclosed *Niven* complaint.

| Second Amended Complaint in *United States ex rel. Niven v. United Air Lines* | Second Amended Complaint in *United States ex rel. Grant v. United Airlines* |
|---|---|
| United failed to properly calibrate tools including torque wrenches. *Niven* SAC ¶ 16(g). | United failed to properly calibrate tools including torque wrenches. *Grant* SAC ¶¶ 6-7. |
| United coerced mechanics to submit false reports. *Niven* SAC ¶ 16(k). | United coerced mechanics to pencil whip deficient repairs. *Grant* SAC ¶ 9. |
| United actively retaliated against mechanics and employees who opposed United's unlawful actions. *Niven* SAC ¶ 16(p). | United retaliated against mechanics after they resisted. *Grant* SAC ¶ 9. |
| United refused requests from the mechanics to provide mechanics with the necessary equipment to properly maintain the engines. *Niven* SAC ¶ 16(a). | United refused requests from the Relator to provide mechanics with the necessary equipment (*e.g.*, radiometer) to properly maintain the engines. *Grant* SAC ¶ 130. |
| United failed and refused to fully and properly test engines upon which repairs had been done. *Niven* SAC ¶ 16(j). | United failed and refused to fully and properly test engines. *See, e.g.*, *Grant* SAC ¶ 109. |
| United failed to comply with work instructions. *See Grant* SAC ¶ 82 citing recitals in settlement agreement, ¶ P, *United States ex rel. Niven v. United Air Lines*, 2:03-cv-00386 (ECF No. 15). | United failed to comply with technical orders and instruction cards. *See, e.g.*, *Grant* SAC ¶¶ 136-40. |
| United failed to perform required maintenance and safety checks on components, tools, and equipment essential to the proper maintenance of the C-17's engines. *Niven* SAC ¶ 16(g). | United failed to maintain a tracking system to ensure tool-control or calibration which had implications on the safety of the C-17s United repaired for the Air Force. *Grant* SAC ¶¶ 8-9. |

Indeed, Grant himself admits that substantially the same allegations were publicly

disclosed in the previous two lawsuits brought by United aviation mechanics at Charleston. *See*

SAC ¶ 9 (noting that the previous two lawsuits made "similar allegations that United had used

uncalibrated tools to repair C-17 engines and retaliated against mechanics after they alerted

managers to defects and resisted being coerced to pencil whip deficient repairs").

The allegations in Grant's SAC are substantially similar to the allegations in the *Niven*

SAC even though the allegations involve different time periods. *See, e.g.*, *United States ex rel.*

*Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1033 (9th Cir. 1998) (previous *qui tam* action

alleging false claims submitted from 1982-1984 constituted a public disclosure of all of relator's

substantially similar allegations, including those relating to false claims submitted from 1985-1989); *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007) ("Not a single circuit has held that a complete identity of allegations, even as to time, place, and manner is required to implicate the public disclosure bar… ."); *United States ex rel. Rosales v. San Francisco Hous. Auth.*, 173 F. Supp. 2d 987, 997 (N.D. Cal. 2001) (although specifics of publicly disclosed fraudulent transactions may differ, a publicly disclosed allegation "cannot be reanimated simply by complaining that defendants performed the same fraudulent acts in succeeding years").  Indeed, allegations that were publicly disclosed 18 years earlier, have found to be substantially similar for purposes of the public disclosure bar.  *See United States ex rel. Newell v. City of St. Paul, Minn.*, No. CIV. 09-1177 DWF/TNL, 2012 WL 2979061, at *5 (D. Minn. July 20, 2012) (finding that allegations in 2012 complaint were "substantially similar" to allegations in three prior lawsuits filed between 1983 and 1994) *aff'd sub nom.  United States ex rel. Newell v. City of St. Paul, Minn.*, 728 F.3d 791 (8th Cir. 2013).

If the Court finds that the allegations or transactions contained in the *Niven* FCA lawsuit are "substantially the same" as the allegations at issue in Grant's FCA suit, then the court should find that the public disclosure bar applies.  *See United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825 (E.D. Va. 2013) (reversed on other grounds).  In *Beauchamp*, the court found that an earlier FCA case that had been filled against Academi contained the same allegations of fraud regarding a "billeting scheme" that was also at issue in *Beauchamp*.  Thus, the *Beauchamp* court found that the public disclosure bar applied unless relators were able to qualify as an original source.  Here, the same allegations of fraud regarding the engine maintenance scheme were previously alleged in *Niven*, and Grant should only be allowed to proceed if he is an original source.

### 3.    Grant is Not Entitled to Original Source Status.

Grant fails to qualify as an original source.  Section 3730(e)(4)(B) defines an "original source" as:

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

Stated simply, Grant can only be an original source if he provides information that is independent of and materially adds to the allegations or transactions that have already been publicly disclosed.  Here, Grant purportedly has independent information that he obtained from his observations as a United mechanic.  However, the information pled does not materially add to the allegations already publicly disclosed in the *Niven* complaint.  Indeed, the essential elements of the engine maintenance scheme were already disclosed in the *Niven* complaint, and relator's complaint only adds illustrative examples of the sort of behavior that the *Niven* complaint describes.  *See Beauchamp*, 933 F. Supp. 2d at 843 (finding that relators did not qualify as "original sources" for the false billeting scheme because relators knowledge only added illustrative examples of the behavior that had already been publicly disclosed).  *See also* SAC ¶ 90 (describing example of repair allegedly not being properly completed).

As a result of applying the three-prong public disclosure analysis to the SAC, the public disclosure bar applies, and dismissal of the SAC is required.

### C.    The SAC Fails to State an FCA Retaliation Claim Under § 3730(h).

To state a claim for retaliation under the FCA, a relator must plausibly allege:  (1) that he engaged in "protected activity" by acting in furtherance of a *qui tam* suit; (2) that his employer knew of these acts; and (3) that his employer took adverse action against him as a result of these

acts. *See, e.g.*, *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013); *Young v. CHS Middle E., LLC*, 611 F. App'x 130, 133 (4th Cir. 2015). Here, Relator's SAC fails to properly plead all three elements.

### 1.    Relator Fails to Plead Protected Activity.

The Fourth Circuit has applied a "distinct possibility" standard to determine whether a plaintiff engaged in a protected activity. *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010). Under this standard, protected activity occurs where the employee's conduct reasonably could lead to a viable FCA action. *Id.* The statute specifically protects "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." *Id.* at 343. Actions in furtherance of a *qui tam* suit generally include "situations in which litigation could be filed legitimately and excludes those in which an employee . . . fabricates a tale of fraud to extract concessions from the employer, or . . . just imagines fraud but lacks proof." *Id.* at 344 (internal citations and quotations omitted). It is well settled that "mere reporting of concerns to supervisors" does not amount to protected activity under the act. *Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 403, 407-08 (D. Md. 2011); *see also Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [Relator] was acting 'in furtherance of' a *qui tam* action.") (citation omitted).

According to the SAC, Relator "repeatedly expressed concerns" to his superiors that United was not properly maintaining the C-17 aircraft engines, that he was unable to certify work appropriately that had been done due to the lack of tools and/or appropriate calibration of tools; and that employees had not received proper training or certifications. SAC ¶ 175. According to the SAC, Relator attended "investigatory meetings" at which Relator and his manager discussed Grant's observations about pencil whipping, the failure to use a radiometer for FPI, and the use

of uncalibrated tools.  SAC ¶ 177.  Relator also alleges that he brought the use of "unserviceable" tools to the attention of United through Managing Director Mark Eldred.  SAC ¶¶ 179-180.

Even if these allegations are taken at face value, they do not rise to the level of protected activity because "mere reporting of concerns to supervisors" by an employee working under a government contract does not constitute protected activity under the FCA.  *Glynn*, 807 F. Supp. 2d at 403.  Protected activity requires conduct that could reasonably lead to an FCA action. Relator fails to allege that he conducted any investigation, or took any other steps in furtherance of an FCA action prior to his discharge.  To the contrary, based on the allegations of the SAC, Relator was merely "performing his job function" as an aviation mechanic "by reporting concerns and suggesting modifications to his supervisors", as opposed to engaging in protected activity under the FCA.  *Id.* at 408.

Moreover, the March 18, 2014, email to Managing Director Mark Eldred, which was also attached as an exhibit to the amended complaint, is not evidence that Relator was acting furtherance of a *qui tam* action because there is no indication in this email that Relator is concerned about fraud.  Grant's concern about United's alleged improper methods—without any suggestion that Relator was attempting to expose illegality or fraud within the meaning of the FCA—does not rise to the level of protected activity.  *See United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 736 (4th Cir. 2010) (employee on a government-funded construction project was not engaged in protected activity where he merely complained of improper methods where there was no evidence that the employee was concerned about fraud).  In short, the 3730(h) claim fails because Relator has not alleged plausible facts that he engaged in protected activity.

## 2. Relator Does Not Allege Notice of Action in Furtherance of an FCA Suit.

Even if Relator had sufficiently alleged that he engaged in protected activity, he would still have to plead facts sufficient to meet the second prong of the *prima facie* case of retaliation under the FCA—*i.e.*, that Relator put United "on notice that litigation [was] a reasonable possibility." *United States ex rel. Parks v. Alpharma, Inc*., 493 F. App'x 380, 388 (4th Cir. 2012) (citation omitted). The employer must have a sufficient amount of knowledge regarding the protected activity so as to be on notice of the possibility of future FCA *qui tam* litigation. Without that requisite knowledge, it would be impossible for the employer to retaliate against the employee. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998) ("unless the employer is aware that the employee is investigating fraud … the employer could not possess the retaliatory intent necessary to establish a violation of § 3730(h)") (internal citations and quotations omitted). But when a complaint is couched in terms of "concerns and suggestions, not threats or warnings of FCA litigation" it is insufficient to constitute notice for purposes of a retaliation claim. *Parks*, 493 F. App'x at 389 (citation omitted).

In *Parks*, the relator alleged that she was terminated in retaliation for raising a variety of concerns about her employer's promotion of off-label uses for a drug, which allegedly led to the submission of false claims. According to the relator, she investigated and questioned her employer's illegal promotional activities and raised concerns regarding certain clinical trials. *Id*. The Fourth Circuit, however, affirmed that the relator failed to establish the notice prong of her purported retaliation claim because, while she raised a number of concerns, she did not make any "threats or warnings of FCA litigation." *Id*. As such, her employer was not "on notice that FCA litigation was a reasonable possibility." *Id*. So too here. There is nothing in the SAC to suggest that Relator made threats or warnings of potential FCA litigation. Accordingly, Relator has not

sufficiently alleged that his expression of "concern" would raise the distinct possibility of an FCA suit. Without knowledge of the protected activity, United could not have possessed the retaliatory intent necessary to establish a violation of § 3730(h).

### 3. Relator Does Not Allege that United Took Adverse Action Against Him as a Result of These Acts.

Lastly, Grant has not pled that United took adverse action against him because of his protected activity. *Glynn*, 710 F.3d at 214. In Relator's Opposition to Defendant's Motion to Dismiss the FAC, Relator said that he was terminated after United learned that he was "documenting" United's noncompliance. Opp'n at 18. (ECF No. 31). As the Court noted, this conclusion is "rank speculation" and does not satisfy the final prong of the retaliatory discharge claim. Order at 17. Once again, in the SAC, Relator engages in rank speculation when he alleges that he was "terminated as a result of his manager, John Hagerman, seeing him taking pictures of the new FPI radiometer coming back to the facility after he had complained about its lack of calibration." SAC ¶ 184. Relator simply has not pled enough facts to raise a plausible inference that this incident was the reason for this termination. Nor does this FPI incident constitute protected activity because Relator has not shown how raising concern about liquid fluorescent penetrant could lead to a viable FCA action. Thus, Relator has not alleged plausible facts that United took adverse action against him because of his protected activity.

### 4. A Binding Arbitration Opinion Determined that United Had Just Cause to Discharge Relator.

The SAC makes specific references to Relator's employment arbitration proceeding in March 2014, quoting from sworn arbitration testimony. *See*, e.g. SAC ¶ 178. The SAC also references the Grievance Report that Relator submitted under the Collective Bargaining Agreement with his labor union, Teamsters Local 528, alleging that "On 3.21.14 I was fired without just cause…I recently complained about "Safety of flight" issues referring to pencil

whipping known discrepancies on Air Force C17 Jet Engine 17Z84 and for directing CHSPD technicians to accomplishing and inspecting work with unserviceable and uncertified tools and [technicians]." SAC ¶ 182. This Grievance Report initiated the grievance process, including in a full hearing and culminating in an Arbitration Opinion and Award dated October 17, 2015 (Exhibit B). The SAC thereby incorporates the Grievance testimony and the resulting arbitration opinion.

As noted in the SAC, the issue in the arbitration was whether the Relator, "was fired without just cause." The same facts alleged in the SAC regarding retaliation were raised in his arbitration, and after a full hearing, the arbitrator found that United had just cause for Relator's discharge. *See,* Arbitration Opinion, Exhibit B, at p. 19:

> The Board has found that the Company had just cause to discipline the Grievant for his conduct relating to the Hagel visit, the Union election incident and the Danny Page incident. These three violations bring the Grievant's termination within the Company's progressive discipline system which was fully known to the Grievant.

The arbitrator's decision that Relator was discharged for just cause, and not due to his complaints about "safety of flight," Pencil whipping," and "accomplishing and inspecting work with unserviceable and uncertified tools and [technicians]" is binding on the Relator and cannot be relitigated. *See Perry v. American Airlines, Inc.*, 405 F. Supp. 2d 700, 707 (E.D. VA 2005) (finding arbitration board's determinations that plaintiff was terminated for falsifying documents and insubordination were binding on plaintiff and that plaintiff could not relitigate his discharge in a subsequent FMLA litigation).

In sum, Relator has failed to sufficiently plead a cause of action for retaliatory discharge under 31 U.S.C. § 3730(h) and his retaliatory discharge count should be dismissed.

**D.    The SAC Should be Dismissed with Prejudice.**

This motion to dismiss is the third filed by United.  Relator has twice attempted address the deficiencies in his complaint.  Yet, the SAC suffers from the same flaws as the two prior attempts—*i.e.*, there are no facts alleged regarding any false claims submitted and no facts establishing the retaliation elements of protected activity or notice.  The Court's order dismissing Relator's second complaint clearly identified its numerous pleading deficiencies under the Federal Rules, and yet the third attempt suffers from the same fatal flaws.  The Court has discretion to allow multiple amendments, but it is not required to continue to allow amendments that would be futile, as in this case.  *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 200 (4th Cir. 2014); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  After three unsuccessful complaints, dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, United respectfully requests that Relator's SAC be dismissed under Rule 12(b)(6) pursuant to the public disclosure bar and for failure to meet the pleading standards of 8(a) and 9(b).

Dated:  January 24, 2017                    Respectfully submitted,

   /s/ Michael T. Cole
Michael T. Cole
Federal ID #: 206
Erika J. Karnaszewski Fedelini
Federal ID #: 12005
**Nelson Mullins Riley & Scarborough LLP**
151 Meeting Street
Liberty Center, Suite 600
Charleston, SC 29401
Telephone:  843-853-5200
Facsimile:  843-722-8700
Email: mike.cole@nelsonmullins.com
       erika.fedelini@nelsonmullins.com

19

Keith Harrison (admitted *pro hac vice*)
Paul Alp (admitted *pro hac vice*)
Jason M. Crawford (admitted *pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Telephone:  202-624-2500
Facsimile:  202-628-5116
Email: kharrison@crowell.com
           palp@crowell.com
           jcrawford@crowell.com

*Attorneys for Defendant United Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM** was filed with the Court's CM/ECF System, which will send notice of the electronic filing to all counsel and parties of record.

 /s/ Michael T. Cole                                
Michael T. Cole
Nelson Mullins Riley & Scarborough LLP
151 Meeting Street
Liberty Center, Suite 600
Charleston, SC 29401
Telephone:  843-853-5200