# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. GRANT | ) ) ) | |
| Plaintiff, | ) ) | No. 2:15-cv-00794-DCN |
| vs. | ) ) | |
| UNITED AIRLINES INC., | ) ) | **ORDER** |
| Defendant. | ) ) ) | |

This matter is before the court on defendant United Airlines Inc.'s ("United") motion to dismiss, ECF No. 30. For the reasons set forth below, the court grants United's motion to dismiss.

## I. BACKGROUND

David Grant ("Grant") was an Aviation Maintenance Technician for United at the Charleston Air Force Base in North Charleston, South Carolina. Grant was promoted to Lead Aviation Maintenance Technician in 2012. During the course of his employment at United, Grant maintained engines on aircrafts including the Boeing C-17 Globemaster III aircraft ("C-17"), which is currently being used by the United States Air Force. United performed contractual services for the United States Air Force by servicing engines on the C-17. According to Grant, the contract between United and the government required United to properly maintain C-17 engines in accordance with the specifications in the contract and maintenance manuals, but United failed to do so. Grant alleges that United improperly falsified engine repairs and inspections, leading to C-17 engines that were not in a serviceable condition.

1

On February 24, 2015, Grant filed suit against United, alleging violations of the False Claims Act (the "FCA"), 31 U.S.C. § 3729, et seq. Specifically, Grant alleges that United violated the FCA by: (1) using parts obtained from the trash to service the C-17 engines yet billed the government for new parts; (2) failing to certify the tools used to repair the C-17 engines; (3) failing to perform required maintenance and safety checks on component tools and equipment; (4) falsifying inspection records; (5) falsifying the certification for the serviceability of parts; (6) failing to train and certify inspectors and mechanics; (7) failing to perform liquid fluorescent penetrant inspections according to maintenance procedures; (8) fraudulently certifying components that required fluorescent penetrant inspections; (9) failing to use the proper tools and properly calibrated tools; (10) failing to provide mechanics with necessary equipment and tools; (11) failing to provide proper equipment and tools for rivets; (12) failing to properly test engines; (13) failing to tear down and build C-17 engines according to job instructions. Grant further alleges that he was terminated from his position because he brought his concerns about United's allegedly fraudulent and improper practices to his superiors.

The court dismissed Grant's first amended complaint on November 18, 2016. On December 19, 2016, Grant filed a second amended complaint ("SAC"). The SAC contains a number of factual allegations, which can be grouped into four categories: (1) United signed off on maintenance work that had not yet been completed as having been performed, or "pencil whipped" the repairs, SAC ¶¶ 86–108; (2) United failed to properly certify and calibrate tools that were used in the repair and maintenance of the C-17 aircraft and its engine, SAC ¶¶ 109–170; (3) United failed to provide inspectors with the recurrent training and eye examinations necessary for them to sign off on inspection

2

work, SAC ¶¶ 171–174; (4) Grant was discharged in retaliation for expressing concerns about United's practices. SAC ¶¶ 175–188.

The SAC contains three counts under the FCA: (1) presentment of a false claim under § 3729(a)(1)(A); (2) making or using false records or statements material for payment under § 3729(a)(1)(B); and (3) retaliatory discharge pursuant to § 3730(h). On January 24, 2017, United moved to dismiss the SAC. ECF No. 43. Grant responded on February 28, 2016. United replied on March 14, 2017. The court held a hearing on April 5, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II.   STANDARD

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in the light most favorable to the plaintiff.

3

Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.     Rule 9(b)**

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," when a party alleges "fraud or mistake," he or she "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity requires that the claimant state "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 at 590 (2d ed. 1990)). A primary purpose of Rule 9(b) is to ensure "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." Harrison, 176 F.3d at 784 (internal citations omitted). Lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir. 1997).

**III. DISCUSSION**

United argues that the SAC fails for two independent reasons—(1) Grant once again fails to sufficiently allege "presentment" of a false claim, as required under the FCA, and (2) the SAC fails under the public disclosure bar of the FCA because it raises allegations that are substantially similar to a previous false claims case that was filed, United States ex rel. Niven v. United Airlines, No. 2-03-cv-0386 (D.S.C. 2004). The court finds that the SAC fails to allege presentment of a false claim under the pleading requirements of Rule 9(b) and the FCA, an independent and adequate ground for dismissing a FCA claim, and so will not analyze the public disclosure issue. The court then proceeds to analyzing Grant's § 3729(a)(1)(B) claim and Grant's retaliatory discharge claim. Because the court finds that the SAC—which is really the third amended complaint—fails to allege a claim under the FCA, it dismisses the SAC with prejudice.

**A.     9(b) and False Claims Act Pleading Requirements for Presentment**

United contends that the SAC fails to identify false claims that were actually submitted to the government, and that without plausible allegations of presentment Grant fails to meet the particularity requirement of Rule 9(b) and the general plausibility standard of 12(b)(6). ECF No. 43 at 6. United also contends that the presentment issue bars the SAC under the pleading requirements of the FCA, which prohibits any person from knowingly "caus[ing] to be presented" false claims for payment or approval to the government. 31 U.S.C. § 3729(a)(1)(A). A false statement is actionable under the FCA only if it constitutes a "false or fraudulent claim." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999). A relator's complaint must allege the

"presentment" of a false or fraudulent claim to the government for payment or approval under 31 U.S.C. § 3729(a)(1)(A) for the FCA to apply. The court finds that, once again, the SAC fails under the pleading requirements of both Rule 9(b) and the FCA.

1. **Rule 9(b) Pleading Requirement**

United argues that the SAC should be dismissed because it "doubles-down" by adding more facts and more detail about the alleged fraudulent scheme, apparently perpetrated through a complex subcontracting system between the United States Air Force, Pratt & Whitney, Boeing, and United, but ultimately fails to plead a "single additional fact related to presentment of a claim." ECF No. 43 at 6. The court agrees.

The pleading requirements for fraud-based claims brought under the FCA must both meet the plausibility standard of Iqbal and be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Harrison, 176 F.3d at 783–85.[1] Rule 9(b) provides that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy Rule 9(b), a plaintiff asserting a claim under the FCA "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (citation and internal quotation marks omitted); see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 509 (6th Cir. 2007) (explaining that to satisfy Rule 9, an

---

[1] Since failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6), see United States ex rel. Jones v. Collegiate Funding Servs., Inc., 469 F. App'x. 244, 257 (4th Cir. 2012), the court analyzes the SAC only under Rule 9(b).

FCA plaintiff must allege "the time, place, and content of the alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."). The Fourth Circuit has strictly applied the terms of Rule 9(b) to cases brought under the FCA. See, e.g., Wilson, 525 F.3d at 379–80 (explaining the requirements of Rule 9(b) and affirming dismissal for failing to comply); Harrison, 176 F.3d at 784, 789–90 (same).

A relator's claim must have some indicia of reliability to support the allegation of an actual false claim. See, e.g., U.S. ex rel. Butler v. Magellan Health Servs., Inc., 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) (applying Rule 9(b) and dismissing amended complaint under the FCA, due in part to plaintiff "plead[ing] a fraudulent scheme of conduct which may well be prohibited by law" but not pleading "any specific occurrences of a false claim"). Without allegations of presentment, a relator not only fails to meet the particularity requirement of Rule 9(b), but also does not satisfy the general plausibility standard of Iqbal. See U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion."). While the SAC adds allegations about the contractual relationships between the Air Force, Pratt & Whitney, and Boeing, none of the 23 paragraphs that the SAC devotes to this contract structure describe how this structure led to United submitting, or caused to be submitted, any materially false claims to the government. Even assuming that this subcontracting structure itself was somehow fraudulent—which, the court notes, Grant does not seem to be alleging—a relator must plead specific occurrences of a false claim, not just a detailed description of a fraudulent

7

scheme employed by the defendant. See United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1055 (S.D. Ga. 1990) (complaint did not satisfy Rule 9(b) because it provided a detailed description of a fraudulent scheme employed by the defendant but contained no specific allegations of facts that would support such fraud claims). In the SAC, Grant alleges a complex multilayer agreement between United, Boeing, and Pratt & Whitney, the manufacturer of the C-17 engines. But what Grant fails to allege is (1) whether United's "pencil-whipped" maintenance work at the base was actually presented to the government, and if so which entity presented the claims; and (2) that these deficient repairs were not caught and remedied by a company at a higher level in the subcontractor agreement, namely by either Boeing or Pratt & Whitney. Furthermore, a review of the SAC demonstrates that there are still no payments, dates, or other indicia of reliability by which to determine if United actually submitted claims to the government.

### 2. False Claims Act Pleading Requirements

The SAC also fails the pleading requirements of the FCA itself. To state a claim under the FCA, a relator must allege: (1) a false statement or fraudulent course of conduct; (2) the requisite scienter on the defendant's part; (3) that the false statement was material to a false claim for payment; (4) that the false claim caused the government to pay out money or to forfeit moneys due. Harrison, 176 F.3d at 788. These elements apply to violations of both § 3729(a)(1)(A) and 3729(a)(1)(B). United States ex rel. Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 913 (4th Cir. 2003). The central question under the FCA is presentment, or whether the defendant actually

presented a "false or fraudulent claim" to the government. See Harrison, 176 F.3d at 785 (quoting United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995)).

The SAC describes in detail the "exclusive, sole-source primary contract and subcontracts" and the responsibilities of Boeing, Pratt & Whitney, and United in maintaining the C-17 fleet. It also discusses a 2014 report from the Inspector General for the Department of Defense ("the Inspector General report"), which concluded that Pratt & Whitney "exploited" its "sole-source" subcontract for the C-17's engine sustainment. ECF No. 46 at 8. Grant then alleges that United's internal documents confirm United's "contract with Pratt & Whitney and Boeing" to repair the C-17 engines. SAC ¶¶ 38-43. However, even assuming that Grant observed that United fraudulently billed for falsified repairs and inspections on C-17 engines, at most the SAC alleges a fraudulent scheme—at no point does Grant allege that he witnessed conduct that <u>actually resulted</u> in the submission of an actual false claim for payment. Similarly, the Inspector General report which states that Pratt & Whitney's conduct "may have" resulted in the Air Force paying unreasonable prices for engine sustainment services does not necessarily implicate United in the investigation regarding price reasonableness for maintenance of the C-17 engines—indeed, a review of the report does not reveal any allegations of wrongdoing against United at all.

When, as here, a defendant's actions could have but need not necessarily have led to the submission of false claims, a relator must allege "with particularity" that specific false claims actually were presented to the government for payment. United States ex rel. Clausen, 290 F.3d at 1313. ("[W]e cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the

9

lawsuit."). In U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013), the Fourth Circuit held that the particularity requirement of Rule 9(b) does not permit a FCA plaintiff "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Id. at 457 (citing U.S. ex rel. Clausen v, 290 F.3d at 1311). Once again, here Grant does not include any evidence of a claim actually being submitted to the government. For example, although Grant asserts that "any claim made to the Air Force that included work requiring the use of a Permaswager between 2008 and March 2014 was a fraudulent claim for payment," SAC ¶ 162, he does not include any evidence that United actually submitted any claim to the Air Force requiring the use of a Permaswager between 2008 and March 2014.

Grant next argues that the SAC adequately alleges that claims were submitted to the government under the narrow exception carved out in Nathan for a complaint where "specific allegations of the defendant's fraudulent conduct necessarily [lead] to the plausible inference that false claims were presented to the government." Nathan, 707 F.3d at 457. However, Grant's argument that "it is utterly implausible that United continued working . . . yet no related claims were presented to the government" fails because the simple fact that United performed allegedly deficient work on the C-17 engines does not mean that these claims were necessarily submitted to the Air Force. ECF No. 46 at 8. Indeed, this exact argument was rejected by the court in United States ex rel. Szymoniak v. American Home Mortgage Servicing, Inc., 10-cv-01465 (D.S.C. July 25, 2014), where the FCA relator argued that it was "not plausible that the costs of

preparing the thousands of fraudulent documents . . . were not charged to the trusts or [the Agency of Housing and Urban Development]." ECF No. 50 at 5. This court finds guidance in the reasoning of the Szymoniak court, which held that the complaint did not meet the 9(b) standard because the relator did not plead facts that:

> this scheme actually resulted in the submission of specific false claims to [the Agency of Housing and Urban Development] for payments pursuant to the [Fair Housing Act] mortgage insurance program . . . Thus, like in Nathan, Relator alleges an underlying fraudulent scheme but fails to provide the next link for [False Claims Act] liability to attach—that Defendants submitted false claims to [the Agency of Housing and Urban Development] for payments.

Szymoniak.

United may have been the only company that performed the specific task of overhauling the inlets in the C-17's engine, but Grant's argument that "the only plausible inference is that United's continued work . . . resulted in claims on the government" and that "it is utterly implausible that United continued working . . . and yet no related claims were presented to the government" is similar to the relator's unsuccessful argument in Szymoniak. ECF No. 46 at 16. The court agrees with United that there are "plausible situations in which United would not necessarily bill for the work that he observed" and that United could have "addressed the alleged nonconformities prior to billing." Indeed, the subcontracting structure that Grant alleges in the SAC makes it more likely that another party in the subcontracting structure, such as Pratt & Whitney or Boeing, could have identified the deficiencies in the C-17 engines and informed United which would have corrected these deficiencies before submitting the claim was ultimately submitted to the government. ECF No. 50 at 4. Grant cannot state a claim under the FCA based on the presumption that United submitted false claims to the Air Force under a contract that

it had with Boeing and Pratt & Whitney. This is particularly so when, as here, there are companies above United such as Boeing and Pratt & Whitney that could have caught the deficiencies in the C-17 engines and corrected them before the Air Force ultimately received the C-17 engines. To assume that United's allegedly "pencil-whipped" maintenance work on the C-17 engines led to deficient engines being delivered to the Air Force, as opposed to deficient engines being delivered to Boeing or Pratt & Whitney as the next company in the subcontracting scheme that then fixed any deficiencies in the C-17 engine, is too great an analytical leap for the court to make.

Ultimately, under Nathan the FCA relator must identify either specific false claims or allege a scheme that necessarily resulted in the submission of false claims. As explained above, the SAC's allegations do not meet either of these standards. Accordingly, the court finds that SAC fails to plead presentment under the requirements of both the FCA and Rule 9(b).

### B. Making or using false records or statements material to payment or approval of false claims under 31 U.S.C. § 3729(a)(1)(B)

United next contends that Grant's claim that United knowingly made, used, or caused to be made, a false record or statement material to a false or fraudulent claim fails under § 3729(a)(1)(B) because the SAC does allege presentment of an actual false claim. ECF No. 43 at 8. Grant alleges that United violated § 3729(a)(1)(B) by keeping false records, including job information cards, SAC ¶¶ 64–70, customer maintenance tags, SAC ¶¶ 71–75, and certificates of conformance, SAC ¶¶ 76–78.

A viable § 3729(a)(1)(B) claim requires allegations of an actual false claim for payment. To plead a § 3729(a)(1)(B) claim with the requisite particularity, the complaint

need not "allege details of fraudulent bills actually presented to the government," but the relator must allege facts showing that "the defendant made a false record or statement [material to] a false or fraudulent claim paid by the Government." 31 U.S.C. § 3729(a)(1)(B). As explained above in section III.A, Grant has not alleged a false claim. Thus, his false records claim fails as a matter of law. United States ex rel. Kelly v. Serco, Inc., 846 F.3d 325, 335 (9th Cir. 2017) (holding that the existence of a false claim is an "essential element of a false records claim under § 3729(a)(1)(B)," and affirming dthe istrict court's grant of summary judgment where relator failed to raise a genuine issue of material fact regarding the submission of a false or fraudulent claim).

### C. Retaliatory Discharge under False Claims Act

Finally, United argues that Grant's retaliatory discharge claim should be dismissed pursuant to Rule 8(a) because the SAC fails to plausibly allege that Grant engaged in protected activity, that United knew about the protected activity, and that United took adverse action against him because of the protected activity. ECF No. 43 at 14. The court agrees.

> The FCA prohibits retaliation against any relator, providing that:
>
> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(l). To establish a prima facie case of unlawful retaliation, a whistleblower plaintiff must establish that: (1) he engaged in "protected activity"; (2) his employer knew or was reasonably on notice that he was engaged in protected activity;

13

and (3) his employer took adverse action against him as a result of his protected activity. See Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013); see also Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 866 (4th Cir. 1999). The Fourth Circuit has made clear that a plaintiff's allegations need only meet the pleading standard set forth in Rule 8(a), Fed. R. Civ. P., not the heightened pleading standard set forth in Rule 9(b), Fed. R. Civ. P. Smith v. Clark/Smoot/Russell, 796 F.3d 424, 433 (4th Cir.2015). At the motion to dismiss stage, a reviewing court is "obligated to view only the [plaintiff's] pleadings, and to view them generously in the [plaintiff's] favor." Young v. CHS Middle East, LLC, 611 Fed. Appx. 130, 133 (4th Cir. 2015).

First, the relator must engage in "protected activity." United argues that Grant has failed to adequately allege that he engaged in protected conduct because while Grant: "repeatedly expressed concerns" that United was not properly maintaining the C-17 aircraft engines, that he was unable to certify work appropriately due to the lack of tools and/or appropriate calibration of tools, and that employees had not received proper training or certifications, SAC ¶ 175, reporting these concerns is not "protected activity" within the False Claims Act. ECF No. 43 at 14.

To determine whether a plaintiff engaged in a protected activity, the Fourth Circuit has applied the "distinct possibility" standard. Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 344 (4th Cir. 2010). Under that standard, and as a result of the 2009 amendment to the FCA, protected activity includes both (i) acts done "in furtherance of an FCA claim" and (ii) "other efforts to stop one or more violations" of the FCA. Young v. CHS Middle E., LLC, 611 F. App'x 130, 132 (4th Cir. 2015).

Grant does allege that he attended "investigatory meetings" where he discussed his observations about United's practice of "pencil whipping" with his manager, and that he sent an email to United's Managing Director of Maintenance, Repair, and Overhaul Mark Eldred ("Eldred") about the use of "unserviceable" tools and that the tools could result in "catastrophic failure of an engine." SAC ¶¶ 177; 179–180. However, courts within the Fourth Circuit have been clear that "mere reporting of concerns to supervisors" does not amount to protected activity under the False Claims Act. See Glynn v. Impact Sci. & Tech., Inc., 807 F. Supp. 2d 391, 403 (D. Md. 2011), aff'd sub nom. Glynn v. EDO Corp., 710 F.3d 209 (4th Cir. 2013); see also Zahodnick v. Int'l Bus. Machines Corp., 135 F.3d 911, 914 (4th Cir. 1997) ("Simply reporting his concern of a mischarging to the government to his supervisor does not suffice to establish that [Relator] was acting 'in furtherance of' a qui tam action."). In Zahodnick, the Fourth Circuit found it persuasive that there was no evidence that relator "initiated, testified for, or assisted in the filing of a qui tam action during his employment . . . [i]n fact, the record discloses that Zahodnick merely informed a supervisor of the problem and sought confirmation that a correction was made" in finding that there was no "protected activity" under the False Claims Act. Id.

Similarly, Grant's reporting of concerns to his supervisors is not enough for this court to find that Grant engaged in protected activity under the FCA. Grant fails to allege that he conducted any investigation or took any steps in furtherance of commencing a FCA action before his termination. While Grant's email to Eldred expresses his concern with the method by which United was conducting repairs on the C-17 engines, it does not indicate that Grant was reporting his concern because he was concerned about fraud to

15

the government as a result of United's tool maintenance. "An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation." Luckey v. Baxter Healthcare Corp., 183 F.3d 730, 733 (7th Cir. 1999). There is no allegation of impropriety or illegality by United that Grant includes in his email to Eldred. In U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 735 (4th Cir. 2010), the court found that there was no protected activity where an employee reported problems that he saw on a government-funded construction site but did not indicate an investigation into the company's possible wrongdoing. This is similar to the situation the court has before it, where Grant alleges a number of additional details around his allegedly retaliatory termination, but none of the additional details adequately allege that he was engaging in protected activity.

Ultimately, Grant has not sufficiently alleged that his expressions of "concern" in his email to Eldred, his email in early 2014 alerting to United that it was repairing C-17 engines without the correct tools, or his photographs at the Charleston Module Replacement Center were protected speech—raising concerns is not the same as warning of an impending FCA litigation. See Zahodnick, 135 F.3d at 914 (affirming summary judgment for the employers where employee "merely informed a supervisor of [a] problem," "never informed anyone that he was pursuing a qui tam action," and provided "no evidence that [the employers] were aware of [employee's] alleged protected activity"); see also United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 743 (D.C. Cir. 1998) ("Merely grumbling to the employer about . . . regulatory violations does not satisfy the requirement—just as it does not constitute protected activity in the first place.").

Therefore, the court finds that Grant has not sufficiently pled that he engaged in "protected activity." As such, the court need not decide whether Grant has also failed to allege the remaining "notice" and "retaliatory action" prongs for retaliatory discharge. The SAC fails to sufficiently plead the necessary elements for a retaliatory discharge claim under the FCA.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** United's motion to dismiss for failure to state a claim with prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 7, 2017**
**Charleston, South Carolina**